**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **Katie J. Felder**, as trustee for the next of kin of Dominic Aries Felder, | Court File No.: 07-CV-04929 (DSD/JJK) |
| Plaintiff, | |
| vs. | |
| **Jason King**, individually, and in his official capacity as a City of Minneapolis Police Officer; **Lawrence Loonsfoot**, individually and in his official capacity as a City of Minneapolis Police Officer, | **PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' MOTION IN LIMINE** |
| Defendants. | |

Plaintiff Katie J. Felder submits this Response to Defendants' Motion in Limine.

## I.     Plaintiff does not intend to offer Defendants' personnel or disciplinary files, or internal affairs files in her case in chief.

Defendants request that their personnel information be excluded as improper propensity evidence under Federal Rule of Evidence 404, and because such evidence is irrelevant and prejudicial.

Plaintiff does not intend to generally offer information from Defendants' personnel files, disciplinary files, or internal affairs files in her case in chief.  In the event that Defendants are permitted to offer evidence of their awards and commendations, however, Plaintiff should be permitted to offer personnel and disciplinary evidence in order to provide the jury with complete work-related information about the officers.  *See* Fed. R. Evid. 106 (rule of completeness); *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153,

171-72 (1988) (reaffirming that both codified and common-law rules of completeness permit parties to produce contextual evidence of adversary's partial presentation).

As stated in her principal Memorandum, Plaintiff intends to introduce the Minneapolis Department of Civil Rights ("MDCR") probable cause determination, which has tangential information of Defendants' use of force.  Plaintiff addresses this issue in further detail below.

**II.     Plaintiff does not intend to offer pre-homicide Minneapolis Emergency Communications Center transcripts in her case in chief.**

Defendants seek to exclude evidence of calls for help made to the Minneapolis Emergency Communications Center ("MECC") on behalf of Dominic Felder.  Plaintiff does not intend to offer transcripts of these calls into evidence.

To the extent that Plaintiff elicits witness testimony regarding Dominic Felder's mental state on September 20, 2006, this evidence is clearly relevant to the events which followed (namely, Defendants' chase and homicide of Dominic Felder after being told he was unarmed and in mental crisis), and served as a catalyst for at least one witness's 911 call.  Thus, Plaintiff may elicit testimony surrounding this 911 call, but only for the purpose of contextualizing the course of events.  Any question regarding the extent of the officers' knowledge of Dominic Felder's mental state can be clarified by way of cross-examination and Defendants' presentation of evidence.

**III.    Plaintiff should be permitted to offer limited evidence of Minneapolis Police Department policies and procedures.**

Defendants move for exclusion of any critical reference to policies or procedures of the City of Minneapolis or the Minneapolis Police Department ("MPD").  Plaintiff

does not intend to offer evidence impugning any MPD policies in her case in chief.

However, she reserves the right to offer evidence of what the MPD policies are,

particularly with respect to use of force.  This evidence is relevant to whether Defendants

followed MPD policies, something which bears on the question of whether Defendants

used excessive force.  Indeed, two of Defendants' expert witnesses, Schott Bechthold and

Todd Sauvageau, both render force opinions tested by reference to MPD policies, making

the actual policies extremely relevant.

## IV.     The MDCR probable cause determination is relevant and admissible.

Defendants seek to exclude the MDCR determination's finding that Dominic

Felder's homicide was the product of race-based public services discrimination on the

grounds that it is irrelevant, hearsay and more prejudicial than probative.  Plaintiff has

largely already addressed each of these issues in her initial memorandum (at 18-21).

Defendants are correct that Plaintiff has not directly asserted a race discrimination

claim in this lawsuit.   However, as explained by Plaintiff already, the MDCR's

determination that Dominic Felder's race motivated Defendants to use excessive force on

him is highly relevant, and is admissible to explain why these officers violated a citizen's

constitutional rights.  Likewise, the fact that Defendants inordinately use force on people

of color is highly relevant to their motive, modus operandi, and absence of mistake or

accident in using force against Dominic Felder, an African American.  Fed. R. Evid.

404(b).  To the extent Defendants seek to exclude evidence of their race-based animus

merely because there is no discrimination claim for relief, they take far too narrow a view

of what constitutes relevant evidence.  *See* Fed. R. Evid. 401 ("'Relevant evidence'

3

means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

Defendants' contention that the determination is inadmissible hearsay is equally unavailing. This is not a case like *Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304 (8th Cir. 1984), where the plaintiff was trying to introduce a two-sentence determination based on a cursory investigation. The MDCR determination here is the product of an incredibly thorough investigation, and the determination cites to evidentiary support for each of its myriad factual findings. These facts likewise differentiate the instant circumstances from *Sanders v. Johnson Bros. Liquors*, 2006 WL 3081050, at *1 (D. Minn. Oct. 27, 2006), cited by Defendants. There, the St. Paul Human Rights Department's Memorandum of Findings did not "name the witnesses on which it relies or distinguish between the types of jobs available to [Plaintiff]." Those circumstances, as in *Johnson*, illustrate an incomplete or cursory investigation. But the comprehensive MDCR determination here is akin to that in *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1103 & n.12 (8th Cir. 2000), and, like *Bassett*, is appropriately considered.[1]

---

[1] Defendants raise a novel argument that the determination is not admissible under Rule 803(8)(C)'s hearsay exception because it is not a "final" determination of an agency. This argument is distractive and merits little discussion. Rule 803(8)(C) has no finality requirement—statements are admissible if they are "factual findings resulting from an investigation made pursuant to authority granted by law." Further, to say that the determination here is not "final" because the matter was not tried to a full hearing misconstrues the Minneapolis Civil Rights Ordinance, which permits a complainant to *either* proceed to a full hearing of the MDCR *or* file a civil action—just like the Minnesota Human Rights Act. As Defendants acknowledge, Plaintiff chose to sue the matter out in court rather than venue herself before the MDCR. That decision does not

Defendants also suggest there are too many "negative factors" present in the MDCR determination to allow its admission.  Other than the relevance issues discussed above, they cite the prejudice that attaches to unfairly painting the officers as "racists; bad people."   Yet Plaintiff is entitled to put on her case by showing the officers' motivation for using excessive force on Dominic Felder.  The MDCR determination sets out that motivation in detail.  The fact that Defendants' motivation for using excessive force may have been race-based is highly relevant and, although prejudicial, is not unduly so.

As for Defendants' concern that admitting the MDCR determination will confuse the jury, Plaintiffs respectfully disagree.  The jury can easily be instructed that the determination is made by a separate agency of the City, and that its findings do not establish Plaintiff's claims.  *Accord Bassett*, 211 F.3d 1103 n.12 (MDCR determination did not establish proof of discrimination, but showed "reasonable minds could differ" on question).  And it is highly doubtful that the jury would attribute wholesale each of the MDCR's findings to Defendants King and Loonsfoot when the determination itemizes each of the bases for its findings.

**V.      Plaintiff should be permitted to inform the jury that Defendants are being indemnified by the City.**

Defendants have moved to preclude Plaintiff from informing the jury that Defendants are being indemnified by the City, arguing that consideration of Defendants'

---

somehow alter the investigatory nature of the determination's findings for purposes of a Rule 803(8)(C) analysis.  The MDCR determination is no different than any other administrative agency's findings, and is no less admissible.

financial position is not appropriate in this case.  Plaintiff confesses some confusion.  The

parties have already submitted joint proposed jury instructions on punitive damages.  *See*

R. Doc. 64, Instr. No. 16.  That instruction commands the jury to consider, among other

things, "What amount of punitive damages, in addition to the other damages already

awarded, is needed, *considering the defendant's financial condition*, to punish defendant

for his wrongful conduct toward the plaintiff and to deter the defendant and others from

similar wrongful conduct in the future."  *Id.* (emphasis added).  Thus, to the extent that

Defendants' Motion in Limine now tells the Court (and Plaintiff) that financial condition

is not an appropriate consideration, it is inconsistent with the parties' jointly filed jury

instructions.

Moreover, the fact of indemnification *is* relevant to a jury's punitive damages

analysis.  It is well established that "evidence of a defendant's financial worth is

traditionally admissible for purposes of evaluating the amount of punitive damages that

should be awarded."  *United States v. Big D. Enters. Inc.*, 184 F.3d 924, 932 (8th Cir.

1999).  If the Felder jury is instructed to consider the Defendants' relatively modest

financial condition without knowing the officers' are indemnified by the City, the jury is

left with a skewed view of what amount will deter similar misconduct.[2]

---

[2] Defendants' citation to *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 241 (1983) in
support of its argument to exclude indemnity evidence misses the mark.  In *Fact
Concerts*, the Supreme Court held that punitive damages were not recoverable against
municipalities in § 1983 actions.  But that does not lead to Defendants' requested
extension, that any mention of indemnification is not permitted.  The Court's prohibition
on punitive damages in *Fact Concerts* was premised on the notion that it was only the
taxpayers who were "punished" when a municipality was liable for punitive damages.
But that analysis does not apply here.  Plaintiff only requests that the jury be told the City

Finally, Defendants' citation to Judge Frank's pretrial order in *Alsaker v. DuPaul*,

No. 06-164 (D. Minn. Jan. 11, 2008) (unpublished) (*available at* Lathrop Aff. Ex. 1), is

utterly unhelpful.  The relevant portion of Judge Frank's order is a single paragraph,

containing very little written analysis and instead referencing his remarks from the bench.

*See* Lathrop Aff. Ex. 1 at 2-3.  Defendants did not produce a transcript of those remarks.

Thus, it is impossible to know Judge Frank's reasoning, or even the extent of his order.

*See id.*  ("If the parties wish to inquire as to the Defendants' financial condition or the

City's indemnification, they should first approach the Court outside the presence of the

jury.").  Of course, the fact of Judge Frank's order does not bind this Court, and the

absence of analysis contained therein severely limits its persuasive value.

## VI.    The trial should not be bifurcated.

This case has been active since 2007.  The Court conducted a pretrial conference

in accord with Federal Rule of Civil Procedure 16 in February, 2008, and issued an

attendant scheduling order on February 8, 2008, R. Doc. 7, followed by an amended

scheduling order on June 20, 2008, R. Docs. 21, 22.  The time for Defendants to suggest

that the trial be bifurcated was during these earlier proceedings, not on the eve of trial in

late 2010.  *Accord* Fed. R. Civ. P. 16(c)(1)(M) (matters for consideration at pretrial

conference include request for bifurcated trials under Rule 42(b)).  Because Defendants'

bifurcation request is essentially a motion to amend the scheduling order and Defendants

---

is indemnifying Defendants—something critical because it will inform the jury's analysis
of what amount is sufficient to punish the officers.  A jury's notion about the amount
sufficient to punish the officers obviously changes based on whether the jury believes the
officers are paying the judgment, or whether their employer will be required to do so.

have not established good cause for failure to make their bifurcation request earlier, the motion fails procedurally.  Fed. R. Civ. P. 16(b)(4).

Further, bifurcating the trial such that there is a separate punitive damages portion would result in a clumsy proceeding that is prejudicial to Plaintiff.  "Other acts" evidence is but one consideration for punitive damages—the others, as set forth in joint instruction 16, include how reprehensible Defendants' conduct was, the harm to Plaintiff, and Defendants' financial condition.   It would be impossible to separate out these considerations from the facts of liability; Plaintiff's evidence on liability establishes that Defendants conduct was unjustified and reprehensible.  She should not be required to parse her evidence (and hold her witnesses indefinitely) based on Defendants' tardy and unsupported request for two separate proceedings.

## VII.   Plaintiff's experts are not cumulative.

Defendant complains that Plaintiff experts Lyman, Robinette, and Ernest are cumulative.  Plaintiff will not be presenting testimony from Lyman.  As for Robinette and Ernest, their expected testimony will center on materially different (but equally critical) matters:   Ernest will testify as to his forensic reconstruction of events, whereas Robinette's focus is whether Defendants' use of force was justified.  While there may be some overlap due to the fact that a reliable use-of-force opinion will necessarily consider the course of events, this does not render either expert's testimony cumulative such that it should be excluded.

**VIII.   Plaintiff does not intend to elicit expert testimony that King and Loonsfoot are liars.**

Defendants express concern that Plaintiff's experts will opine that King and Loonsfoot have perjured themselves to cover up an unjustified homicide. Plaintiff does not intend to elicit such testimony from her experts.

**IX.   Family photographs and memorabilia should not be excluded.**

Defendant asks the Court to limit the number of family pictures and memorabilia of Dominic Felder. Plaintiff's exhibits include a few pictures of a youthful Dominic Felder growing from a child to a loving father, and a few poems written by Dominic Felder and his mother. Plaintiff has pared these exhibits down to a minimum already, and will have them available for the Court's further review. However, Plaintiff submits that in this wrongful death case the limited number photographs and memorabilia she seeks to admit are not overwhelming. They are the only concrete evidence a jury will have of Dominic Felder's life and worth to his next of kin.

**X.   Photographs are not excludable simply because they include Felder's body.**

Defendant has moved to exclude what they term "a large number of photos of Dominic Felder's deceased body," arguing the photos have no probative value, are cumulative, and are unduly prejudicial. Again, Plaintiff has whittled the photographs she intends to offer to a select few. Moreover, she does not intend to gratuitously admit photographs of Dominic Felder's body: the autopsy photographs show Felder's wounds, a necessary reference point for Plaintiff's shooting reconstruction expert; a photograph showing that Felder's hands had been bagged demonstrates that evidence had been

preserved for gunshot residue testing; and photographs of Felder's position in the street are relevant to the witnesses' vantage points.  Finally, this is a wrongful death case; there is simply no getting around the fact that some relevant photographs include the decedent's body.  These few photographs are necessary to Plaintiff's presentation of evidence, and she should not be hamstrung in that presentation simply because the photos have Dominic Felder's body in them.

Dated:  October 11, 2010

**JAMES R. BEHRENBRINKER**
 *Attorney at Law*


*s/ James R. Behrenbrinker*
James R. Behrenbrinker (MN Bar No. 186739)
220 South Sixth Street
Suite 1700
Minneapolis, MN  55402-4511
Tel.  (612) 341-1213
Mobile (612) 419-8400
Fax  (612) 436-9019
Email: JBehrenbrinker@comcast.net


**SCHAEFER LAW FIRM, LLC**


*s/ Douglas L. Micko*
Lawrence P. Schaefer (MN Bar No. 195583)
Douglas L. Micko (MN Bar No. 299364)
1700 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402-4511
Tel. (612) 436-9018
Fax (612) 436 -9019

**ATTORNEYS FOR THE PLAINTIF**

#566369-v2