## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

───────────────────────────────────────────────

| | |
|---|---|
| Katie J. Felder, as trustee for the next of kin of Dominic Aries Felder, | 0:07-cv-04929-DSD-JJK |
| Plaintiff, | |
| v. | **DEFENDANTS' REPONSE TO PLAINTIFF'S MOTIONS IN LIMINE** |
| Jason King, Lawrence Loonsfoot, and City of Minneapolis, | |
| Defendants. | |

───────────────────────────────────────────────

Defendants respectfully submit this memorandum in response to Plaintiff's pretrial motions in limine.

## I.     Plaintiff's motion to limit testimony of Defendants' expert witnesses

It is within the district court's discretion to decide whether or not to admit expert testimony. *United States v. Dico, Inc.*, 266 F.3d 864, 869 (8th Cir. 2001).

### A.     Lindsey Thomas

Plaintiff first argues that Defendant's forensic evidence expert, Dr. Lindsey C. Thomas, should be prohibited from testifying to "whether, and to what extent, King and Loonsfoot's descriptions of events are consistent with the autopsy results." Plaintiff's memo in support of motions in limine (Doc. 76) at 4. Plaintiff also summarizes Dr. Thomas' opinions as only that one of the seven shots fired by the officers is consistent with the officers' description of the events. Doc. 76 at 3.

*1.     Whether the officers are testifying truthfully*

First, Plaintiff argues that Defendants intend to ask Dr. Thomas to testify that Officers King and Loonsfoot did not commit perjury when they testified as to their recollection of the events leading up to the death of Dominic Felder.  This is incorrect.

Of course, Defendants do not intend to ask Dr. Thomas whether King and Loonsfoot committed perjury during their testimony.  It is the function of the trier of fact only to resolve conflicts in testimony or judge the credibility of witnesses. *See., e.g., U.S. v. Hernandez*, 569 F.3d 893, 896 (8th Cir. 2009)[1].  ).

*2.     Dr. Thomas' opinions go far beyond what Plaintiff suggests*

Defendants must be permitted to inquire of their forensics expert whether ALL the physical evidence is consistent with their theory of the case.  Here, there is much more to Dr. Thomas' opinions than the summary Plaintiff provided, as set forth above.  Dr. Thomas opined: (1) that the gunshot wound to Mr. Felder's groin is consistent with Officer King's testimony; (2) that the amount of gunshot residue on Mr. Felder's person is consistent with the officers' account; (3) that the gunshot hole in Mr. Felder's pants is consistent with the officers' account; (4) the laceration on Felder's hand is consistent with a hand having been on Officer King's gun;

---

[1] This point corresponds directly with Defendants' pending motion in limine to disallow Plaintiff's experts from testify that Officers King and Loonsfoot's testimony is "concocted," "an agreed-upon version of these facts that would parry blame away from either of them if accepted," and "perjured testimony to effect a cover-up of what may well be a wrongful death at the hands of these officers." *See* Doc. 81 at p. 19.

(5) the absence of injuries to Mr. Felder's scalp is not inconsistent with Officer King's testimony; (6) gunshot wound V is consistent with Officer Loonsfoot's testimony; (7) gunshot wound I is consistent with Officer Loonsfoot's testimony; (8) the other wounds to Dominic Felder's body are consistent with the shots being fired in rapid succession, and consistent with Mr. Felder falling while the shots were being fired.  (See Thomas Report (attached as Micko Aff., Ex. 1 (Doc. 77-1 at pp. 2-4).

Not one of these opinions amounts to whether the officers are telling the truth in their testimony.  Instead, Dr. Thomas' opinions provide the jury with crucial physical evidence supporting Defendants' case.  Under Fed. R. Evid. 702, expert testimony is admissible under the following circumstances:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Here, Dr. Thomas' testimony will assist the jury in understanding whether the physical evidence supports Defendants' theory.  She must be permitted to testify to all of her opinions -- and not only Plaintiff's erroneous characterization of the sum of her expert conclusions.

        3.      *Chaos and confusion*

Finally, Dr. Thomas should be permitted to testify that "the fact that Officer

King thought he shot Mr. Felder in the chest is indicative to me of the level of

confusion and struggle that was occurring at the time the weapon was fired" and

that any inconsistencies in the testimony of the police officers reflect "the level of

chaos and confusion that occurred during this shooting."  *See* Micko Ex. 1 (Doc.

77-1) at p. 4.

For an expert witness to be qualified based on experience, that experience

must bear a close relationship to the expert's opinion.  *Schmidt v. City of Bella*

*Villa* 557 F.3d 564, 571 (8th Cir. 2009), citing *Sylla-Sawdon v. Uniroyal Goodrich*

*Tire Co*., 47 F.3d 277, 283-84 (8th Cir.1995).  Here, Dr. Thomas has been a

forensic medical examiner and pathologist for government offices for 25 years.

*See* Declaration of Sara Lathrop, Ex. 1 (Thomas curriculum vitae).  She has

testified in countless criminal prosecutions.  *See id.*  She has taught courses and

lectured on death investigation and homicides.  *See id.*  She can well testify that in

many cases in which she has been involved in the course of her professional

experience, the examination of the forensic evidence does not match precisely

with the recollection of participants in a tense and rapidly-evolving situation

involving weapons.

Given her experience and qualifications, she should be permitted to testify

that "the fact that Officer King thought he shot Mr. Felder in the chest is indicative

to me of the level of confusion and struggle that was occurring at the time the

weapon was fired" and that any inconsistencies in the testimony of the police officers reflect "the level of chaos and confusion that occurred during this shooting."  *See* Micko Ex. 1 (Doc. 77-1) at p. 4.

B.     Scott Bechthold

Plaintiff has argued that Defendants' use-of-force expert, Scott Bechthold, should be "excluded outright or highly circumscribed."

1.     *Adequacy of MPD policies*

Defendants agree that Bechthold's opinions about the adequacy of Minneapolis Police Department policies should not be introduced into evidence, because this Court dismissed Plaintiff's *Monell* claim against the City.

2.     *Initial seizure*

Plaintiff argues that Bechthold should not be permitted to testify that the officers' initial seizure of Felder was reasonable.  This is incorrect.  This testimony is important because as part of the jury's analysis of whether the officers acted reasonably in using the force they did, under the totality of the circumstances.  The jury might rightly want to know whether the officers acted appropriately in following Felder and deciding to try to handcuff him.

Under the proposed joint jury instruction 9, entitled "Excessive Use of Force, the jury is asked to consider such factors as "whether a reasonable officer on the scene, without the benefit of 20/20 hindsight, would have used such force under similar circumstances," and that "[t]he jury must consider whether the officer's actions are reasonable in the light of the facts and circumstances

5

confronting the officer…." That totality of the circumstances is important for the jury to understand

Likewise, the jury will be asked in the "Assault" jury instruction to consider what force was necessary to effect an arrest. *See* the Proposed Jury Instructions, jointly filed by the parties in this case. In it, the jury is instructed that "[t]he use of threatened force by a police officer is lawful if it is a reasonable use of force when used in effecting an arrest," and that "[a] police officer may not subject the person arrested to anymore restraint than is necessary for the arrest and detention." *See* Joint proposed jury instructions, Instruction No. 10. (Doc. 64 at p. 13).

Scott Bechthold has unique characteristics to assist the jury in understanding those circumstances. Federal Rule of Evidence 702 permits a qualified expert to give opinion testimony if the expert's specialized knowledge would allow the jury to better understand the evidence or decide a fact in issue. *United States v. Arenal*, 768 F.2d 263, 269 (8th Cir.1985). "The touchstone for the admissibility of expert testimony is whether it will assist or be helpful to the trier of fact." McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1408 (8th Cir.1994). Fed. R. Evid. 704(a) provides that expert evidence is not inadmissible because it embraces an ultimate issue to be decided by the jury.

Here, Bechthold should be permitted to testify that, based on his unique qualifications and experience as a law enforcement officer and police chief, how a police officer would ordinarily handle a situation like the one presented to Officers King and Loonsfoot. He, thus, would allow the jury to better understand the

evidence or decide a fact in issue, where his inside information about his industry will assist them in understanding those questions.

2.      *Felder's mental health crisis*

Plaintiff apparently intends to attempt to introduce evidence that Dominic Felder was suffering from a mental health crisis.  She wishes to prevent Defendants' expert witness Scott Bechthold from testifying that reasonable officers, faced with the information Officers King and Loonsfoot possessed, would not have concluded that Felder was experiencing a mental crisis.

As a threshold matter, Defendants have filed a motion in limine to exclude any evidence regarding information received by Minneapolis Emergency Communications Center regarding Dominic Felder's mental or emotional condition, because that information was not relayed to the Defendant Officers, and because the claims against the City were dismissed with prejudice.  *See* Defendants' motions in limine (Doc. 81 at pp. 7-8). In addition, Defendants will object to any evidence offered by Plaintiff showing that Dominic Felder was suffering from a mental health crisis. Defendants anticipate Plaintiff at least attempting to introduce evidence that Tiana Williams told Officer Loonsfoot "he's mental," regarding Dominic Felder.

To the extent any such mental health evidence is introduced, Plaintiff argues that Bechthold should not be permitted to testify that reasonable officers would not have concluded, based on that evidence, that Felder was experiencing a mental health crisis.  Doc. 76 at 5.  Plaintiff's reasoning on this point is that

Bechthold is an expert in police tactics and use of force, but he is not qualified to opine about whether Dominic Felder was actually experiencing a mental health crisis. *Id*. at 5-6.

This objection verges on the ridiculous.  Bechthold's opinion is not on whether, as a matter of science, Dominic Felder was experiencing a mental health crisis.  In fact, that question is irrelevant to this trial, and would be raised only to prejudice the jury against the officers.  *See Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007) ("The fact that Alfred may have been experiencing a bipolar episode does not change the fact that he posed a deadly threat against the police officers. Knowledge of a person's disability simply cannot foreclose officers from protecting themselves, the disabled person, and the general public when faced with threatening conduct by the disabled individual.") (Internal citations and quotation marks omitted.)  The fact that Loonsfoot was told "he's mental" is hardly enough to suggest to the jury that Loonsfoot should have concluded that Felder was experiencing a mental health crisis.

More importantly, Bechthold is an expert in police practices, and his expert qualifications and experience can help the jury understand whether a police officer, under the circumstances facing King and Loonsfoot, should have understood that Felder was experiencing a mental health crisis.  He is not being offered to give an opinion of whether Felder was or was not experiencing a mental health crisis.  Under Rule 702, Bechthold should be permitted to testify that under

the circumstances facing King and Loonsfoot, a reasonable officer would not have understood that Felder was experiencing a mental health crisis.

> 3.     *Deadly force*

Finally, Plaintiff argues that Bechthold should not be permitted to testify that in his opinion, Officers King and Loonsfoot's use of deadly force was reasonable and lawful.

An expert witness may give his or her opinion if it will help the trier of fact understand the evidence or determine a fact in issue. Fed.R.Evid. 702. Such testimony is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact. Fed.R.Evid. 704(a). A trial court may, however, exclude opinion testimony if it is so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be. *Hogan v. AT & T*, 812 F.2d 409, 411 (8th Cir.1987).

"'[D]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility.'" *Williams v. Wal-Mart Stores, Inc.* 922 F.2d 1357, 1360 (8th Cir. 1990), citing *Larabee v. MM & L Int'l Corp.*, 896 F.2d 1112, 1116 n. 6 (8th Cir.1990) (quoting J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702 [02], at 702-30 (1988)). In *Hurst v. United States*, 882 F.2d 306, 311 (8th Cir.1989) (citing *Loudermill v. Dow Chemical Co.*, 863 F.2d 566, 570 (8th Cir.1988)), the Court of Appeals also noted that "[a] trial court should exclude an expert opinion only if it is so fundamentally unsupported that it cannot help the factfinder."

In *Crawford v. Bundick*, 32 Fed.Appx. 785 (8th Cir. 2002), the Court of Appeals held that admission of expert witness testimony on ultimate issue of whether deputy's use of deadly force was proper was not abuse of discretion.

The facts in *Crawford* are strikingly similar to this one in several respects. In that case, a Vietnam veteran apparently experiencing a flashback threatened his wife with a weapon. *Id.* at 785. Eventually two sheriff's deputies arrived. *Id.* at 786. The wife told the officers that the situation had resolved and they could leave, and told the deputies that her veteran husband was experiencing a flashback. *Id.* She warned the deputies not to confront him under those circumstances. *Id.* The deputies nevertheless investigated the situation, entered the home and one deputy drew his weapon. *Id.* The husband emerged from a room yelling, and the deputies perceived him to be reaching for a weapon. *Id.* One deputy shouted at the husband and then fired his weapon, fatally wounding him in the chest. *Id.* It turned out that the husband was in fact armed. Id.

At trial, the deputy called a firearms and police tactics instructor, to testify as an expert regarding what the proper officer response would be under the circumstances. *Id.* The expert testified to standard police operating procedures, including when an officer may use deadly force in the State of Missouri. *Id.* The wife's attorney objected to the question, "Do you have any opinion as to whether or not [the deputy] reacted properly at the time?" *Id.* The district court overruled the general objection and permitted the expert to answer. *Id.*

The Eighth Circuit analyzed whether the district court erred in permitting the defense expert to testify to an ultimate jury issue. The Court noted that a district court's decision to admit expert testimony is reviewed for abuse of discretion. *United States v. Dico, Inc.*, 266 F.3d 864, 869 (8th Cir. 2001). Fed. R. Evid. 704(a) states that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The Court of Appeals concluded that the district court did not abuse its discretion in admitting the expert's opinion on the ultimate issue of whether the deputy's use of deadly force was proper. *Id.*

In fact, it is entirely proper for an expert witness to testify regarding the prevailing standards in the field of law enforcement. *See, e.g., Samples v. City of Atlanta*, 916 F.2d 1548 (11th Cir. 1990). In that case, a defendant/police officer's attorney asked his expert a hypothetical question based on the facts already in evidence regarding what the officer saw as he approached a suspect that he later shot. The attorney then asked for the expert's opinion as to "whether or not it was reasonable for the officer to discharge his firearm when [the suspect] charged him with a knife." Over the plaintiffs' objection, the expert testified that in his opinion the officer acted reasonably.

The Eleventh Circuit court of appeals opined that

[T]he literal wording of the question posed tends to call for an answer that would invade the province of the jury, which in this case was to decide the reasonableness of the officer's actions. We find, however, that the questions leading up to this testimony, and the manner in which the expert answered the question, properly

informed the jury that the expert was testifying regarding prevailing standards in the field of law enforcement. After posing the hypothetical, but before asking for the expert's opinion as to the reasonableness of the officer's actions, the defense questioned the expert regarding the industry standards for judging the appropriate use of force. The expert testified that he agreed with the standard as set out by a previous expert witness, which involved a three-pronged inquiry into the subject's ability to harm, his opportunity to harm, and whether someone was in jeopardy of being harmed by the subject at the time the officer used force against the subject. Then, in explaining his answer to the question posed, the expert spoke in terms of this three-pronged inquiry, analyzing [the suspect's] ability and opportunity to harm [the officer] and the jeopardy faced by the officer.

*Samples,* 916 F.2d at 1551.

Here, it is entirely appropriate for Bechthold to testify regarding the prevailing standards in the field of law enforcement. (In fact, Plaintiff's use of force expert witnesses provide comparable opinions on each point to which Plaintiff objects.) The jury will not be made up of individuals who already have sufficient life experience to understand how police officers react in any given scenario. Under Rule 702, such testimony will assist the jury in evaluating whether the force used in this case was reasonable. Accordingly, Bechthold should be permitted to offer his opinions about King and Loonsfoot's use of force.

C.     Todd Sauvageau

Todd Sauvageau is also a use of force expert. For the same reasons set forth in the section about Scott Bechthold, Sauvageau should be permitted to testify as to his opinions about the force used by King and Loonsfoot

II.     **Evidence that Felder's DNA was on King's gun**

Plaintiff moves exclude the results of the Minnesota Bureau of Criminal
Apprehension (BCA)'s examination of Officer King's weapon, arguing that she did
not have an equal opportunity to do DNA testing because the gun was prematurely
returned to Jason King.  The BCA's examination of the gun revealed the presence
of Felder's DNA on the front sight, equipment rail and possibly the trigger guard
of King's weapon.  This is very important probative evidence showing that Felder
did try to disarm Officer King.  Plaintiff's motion to exclude this evidence should
be denied.

A.     The motion for spoliation sanctions is untimely

First, this motion should be denied as untimely.  Just last month, Judge
Tunheim ruled that a spoliation motion for sanctions filed at the time of summary
judgment would be denied as untimely, for not having been brought before the
non-dispositive motion deadline expired.  *See Nicollet Cattle Co., Inc. v. United
Food Group, LLC*, 2010 WL 3546784 (D. Minn. Sept. 7, 2010) at *6, n2  (Case
0:08-cv-05899-JRT-FLN Document 173 Filed 09/07/10 at p. 13, n2 (Lathrop
Decl., Ex. 2).  *See also Ngo v. Storlie*, No. 03-3376, 2006 WL 1046933, at *1 n. 1
(D.Minn. Apr. 19, 2006), for the proposition that a motion for spoliation sanctions
is non-dispositive.

Plaintiff's own motion notes that Plaintiff's were aware of the return of the
King's service weapon to him as of June 27, 2007.  *See* Doc 77-2 at p. 23.  At that
time, Defendants' counsel noted that the return of the gun could raise spoliation

13

issues should litigation occur.  And yet Plaintiff waited until October 4, 2010 --

three years and four months later -- to bring a motion for spoliation of evidence.

The deadline for bringing non-dispositive motions in this case expired more than

two years ago on October 1, 2008 (See Doc. 13).

In *Nicollet Cattle Co., Inc..,* Judge Tunheim ruled that a spoliation motion

would be untimely if brought at the time a summary judgment motion was before

the Court.  Here, we are a week away from trial.   Following *Nicollet Cattle Co.,*

the motion for spoliation sanctions should be denied as untimely.

> **B.**   <u>Plaintiff's counsel introduced this document into evidence in the
> direct examination of his witness, and stated on the record that he
> had stipulated to its admission into evidence.</u>

Plaintiff's motion to exclude the DNA report should also be denied because

Plaintiff waived this evidence by choosing to introduce it into evidence herself.

On October 7, 2010, the parties took the trial deposition of Plaintiff's

forensic evidence expert, Richard Ernest.  During the deposition, Plaintiff's

attorney states as follows:  "MR. BEHRENBRINKER:  Okay.  And then been

Plaintiff's Exhibits numbers 37, 38 and 39 **by agreement and stipulation are**

**admitted into evidence**."  *See* Lathrop Decl., Ex. 3 (partial rough draft transcript

of trial deposition of Plaintiff's forensics expert Richard Ernest) at p. 4 (emphasis

added.)  Plaintiff's Exhibit 39 is the BCA report regarding DNA evidence on

King's gun.  See Doc. 90 (Plaintiff's Amended Exhibit List).

During his trial testimony, Plaintiff had Ernest examine the BCA report (Id.

at p. 78), explain its import to the jury (id.) and explain why it supported Plaintiff's

case. *See id.* at *e.g.* 79, 80 , 82, 83, 85, 86, 104, 105. Moreover, as part of Defendants' cross of Ernest, they asked him several questions about the report as well. Because Plaintiff's expert repeatedly testifies about this report, and relies upon it to argue that it supports Plaintiff's theory of the case, it is not clear what prejudice caused could be caused by its introduction

Plaintiff also complains that the DNA report is too vague, stating that terms such as "trigger guard" and "slide" are not sufficiently specific. But during his trial testimony, Ernest also referred to several photographs which depicted the areas from which the DNA swabs were taken. (Ernest depo. at 79-80, publishing to the jury and describing Plaintiff's exhibits 37 and 38).

Because Plaintiff herself stipulated to and introduced into evidence the BCA report regarding DNA during her expert's trial testimony, she should not be permitted to have it both ways and attempt to claw it back, now.

    C.   <u>The BCA test was not performed for Defendants' benefit.</u>

Plaintiff's motion to exclude the BCA's DNA test results should also be denied because that test was not performed for the benefit of Defendants. This is not a case where the Defendants in a civil lawsuit controlled certain evidence and had its paid litigation experts perform certain tests to support their case for trial. Instead, the DNA was performed by neutral third party BCA for the homicide investigation into Dominic Felder's death. *See* Doc. 77-2 at p. 2 (report addressed to Sgt. Nancy Dunlap, one of the homicide detectives on this matter).

Like Plaintiff, Defendants in this matter did not have a for-hire expert examine the gun for DNA evidence.  Instead, both parties are in the same position -- they have a report performed by a neutral third party to rely upon.

Therefore, there can be no argument that Defendants should somehow be sanctioned for an unfair advantage.

   D.   Defendants did not intentionally destroy evidence with a desire to suppress the truth

In the Eighth Circuit, courts follow a two-part inquiry to determine whether spoliation sanctions are warranted.  First, "[a] spoliation sanction requires a finding that a party intentionally destroyed evidence with a desire to suppress the truth." *Bakhtiari v. Lutz*, 507 F.3d 1132, 1135 (8th Cir. 2007); see also *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007).   In short, "a finding of bad faith is necessary." *Menz v. New Holland N. Am., Inc.,* 440 F.3d 1002, 1006 (8th Cir. 2006).  Second, where such bad faith has been demonstrated, sanctions are only appropriate where the moving party has been prejudiced because the missing records would have favored its case. *Stevenson v. Union Pac. R.R. Co.,* 354 F.3d 739, 748 (8th Cir. 2004) ("There must be a finding of prejudice to the opposing party before imposing a sanction for destruction of evidence.").

The moving party bears the burden of establishing both of these elements. *Johnson v. Ready Mixed Concrete Co.,* 424 F.3d 806, 812 (8th Cir. 2005) (no spoliation where the moving party "proffered no evidence" that allegedly missing

photographs "were intentionally destroyed to suppress the truth or that they would have helped his case").

Here, Plaintiff cannot establish that Defendants intentionally destroyed evidence with a desire to suppress the truth. Jason King testified that, after the Felder shooting, internal affairs held his gun, and he was using a "loaner" weapon that the MPD only has one model of. *See* Lathrop Decl., Ex. 4 (King depo.) at 123-124. When another officer who used that same type of gun's weapon broke, he could not work until he got a gun. *Id.* At that time, Officer King asked for his weapon back. *Id.* at 124. However, when he got it back, it never worked correctly again. *Id.*

This is not the type of bad faith intentional destruction of evidence that the Courts sanction. Instead, it simply reflects an under-funded police department with very limited resources.

E. Plaintiff cannot establish prejudice

Likewise, Plaintiff has not established that her case has been prejudiced by the fact that only the BCA report regarding DNA exists. See *Stevenson,* 354 F.3d at 748 ("There must be a finding of prejudice to the opposing party before imposing a sanction for destruction of evidence."). Notably, even after Jason King's deposition on June 11, 2008, where Plaintiff learned that King's weapon was never again used because it did not work properly after this incident, Plaintiff did not seek to have the gun tested. More than two years have passed since that time. Plaintiff asked for other evidence, including Felder's clothing, for expert

testing, but did not attempt to have it examined for DNA. Perhaps she hoped that

the specter of destruction of evidence would be more powerful for her case than

any evidence that was actually on the weapon.

In fact, Plaintiff notably has not produced evidence showing that she would

even have been able to do an examination for DNA on King's gun after the BCA

had swabbed its surfaces for its own test. Again, Plaintiff has the burden of

proving prejudice. Nor did Plaintiff ever try to obtain the DNA swabs from its

testing of King's gun, in order to do her own tests on the swabs.

In addition, as noted above, Plaintiff has relied upon the DNA report and

has introduced it into evidence. In summary, Plaintiff cannot establish that the

DNA report from the BCA prejudices her case.

**III.    Police reports, investigative reports, internal affairs reports, and
         internal investigations**.

Plaintiff seeks to exclude all police reports, investigative reports, internal

affairs reports, and reports of internal investigations. Defendants does not oppose

this motion, except that they do seek to introduce those items listed on their

exhibit list. (For instance, the transcript of the dispatch information received by

Officers King and Loonsfoot should be admitted.) But Defendants agree that

collateral investigations of this incident (including the grand jury, the internal

affairs, the Civilian Review Authority) should not be admitted into evidence.

Likewise, the Department of Civil Rights determination should be excluded as

well.

IV.    **Broken window evidence**

Plaintiff seeks to exclude evidence that Dominic Felder threw a large concrete object through a neighbor's window.  This evidence is relevant, probative, not prejudicial, and should be admitted into evidence.

"Relevant evidence" is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Irrelevant evidence is not admissible. Fed. R. Evid. 402.  Even when a court determines that evidence is relevant, it may be excluded "if its probative value is **substantially outweighed** by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." Fed. R. Evid. 403 (emphasis added).

Here, the jury is being asked to consider whether the force used by Officers King and Loonsfoot was reasonably necessary given the circumstances they were facing.

> In determining whether such force was "not reasonably necessary," you must consider such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether a reasonable officer on the scene, without the benefit of 20/20 hindsight, would have used such force under similar circumstances. The jury must consider that police officers are often forced to make judgments about the amount of force that is necessary in circumstances that are tense, uncertain and rapidly evolving. The jury must consider whether the officer's actions are reasonable in the light of the facts and circumstances confronting the officer, without regard to the officer's own state of mind, intention or motivation.

8th Cir. Civil Instr. § 4.10 (2008).

The fact that Felder threw a 45-pound landscaping paver through his neighbor's window minutes before the shooting is probative on the issue of how strong he was during the fight with Officers King and Loonsfoot. Both officers testified that Felder was incredibly strong during their fight with him. Officer King was not able to overpower Felder during the fight; nor was Loonsfoot.

Plaintiff likely intends to introduce evidence about Felder's physical build at trial. Plaintiff's exhibit 103 is Defendants' Response to a Request for Admissions in this matter, including several admissions regarding the height and weight of Felder, King, and Loonsfoot at the time of the shooting. Felder was 5'1", and weighed 150 pounds at the time of his death. Plaintiff likely intends to introduce this evidence to undermine the officers' testimony that Felder was very very strong and that they could not overpower him -- which led to Felder being able to try to disarm Officer King.

Thus, the fact that Felder threw a 45-pound landscaping paver into a house window is relevant to his strength on that night. The jury will be asked to consider "the relationship between the need and the amount of force that was used." Felder's strength on that night is very relevant to "the facts and circumstances confronting the officer." Accordingly, the evidence regarding the patio stone should be admitted.

**V.**     **Civilian Review Authority determination**

Defendant does not oppose Plaintiff's motion to exclude the Minneapolis Civilian Review Authority (CRA) determination that the Katie Felder's complaint about the situation was not sustained.

It is worth noting that Plaintiff seeks to keep out the CRA determination, the grand jury "no bill," the internal affairs investigation that cleared the officers, and any other internal investigation.  Notably, each of these investigations determined that the force used by the officers was reasonable.

Curiously, Plaintiff seeks to introduce the one collateral investigation that came out favorably for her -- the Minneapolis Department of Civil Rights, which issued a "probable cause determination," finding that probable cause existed to believe that the officers were motivated by racial discrimination in using the force they used on Felder.   She seeks to introduce it despite the fact that the subject of that investigation -- racial discrimination -- is not part of this case; whereas all of the other reports that she wants to exclude presented the exact same question that is being considered by the jury:  whether the force used by the officers was reasonably necessary.

**VI.**    **Grand jury "no bill."**

Defendants do not oppose Plaintiff's motion to exclude evidence that when the Hennepin County Attorney presented this matter to a grand jury for a potential criminal indictment against Officers King and Loonsfoot, the grand jury issued a "no bill," declining to indict the officers.

**VII.    Defense witness awards and commendations**

Defendants do not oppose Plaintiff's motion to exclude evidence of defense witnesses' awards, commendations, and similar accolades.  Defendants made a similar motion to keep out character evidence.  Other than expert witness qualifications, no such evidence should be admitted for any witness.

**VIII.  Dominic Felder's criminal history**

Defendants do not oppose Plaintiff's motion to exclude evidence of Dominic Felder's criminal history.  Defendants made a similar motion to keep out character evidence.  Other than expert witness qualifications, no such evidence should be admitted for any witness.

**IX.    Minneapolis Department of Civil Rights**

Plaintiff intends to introduce into evidence the findings of the Minneapolis Department of Civil Rights in a charge of discrimination alleging racial discrimination in this matter.   Both the findings, and any reference to that administrative proceeding, should be excluded from evidence.

A.    The determination should not be admitted as proof of motive, intent, or plan.

Plaintiff argues that the Department of Civil Rights determination should be admitted under Fed. R. Evid. 404(b) as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absences of mistake or accident."  Doc. 76 at 21.  Admitting the determination for evidence of motive, intent or plan would directly violate the law on Section 1983 excessive force cases. Under

Eighth Circuit Model Jury Instruction 4.10, the jury is instructed: "[y]ou **must** consider whether the officer's actions are reasonable in the light of the facts and circumstances confronting the officer, **without regard to the officer's own state of mind, intention, or motivation."** (Emphases added.)

The civil rights determination should not be admitted as evidence of motive, intent, or plan.

B.  <u>The racial discrimination claim is not being asserted in this lawsuit.</u>

Second, the issue of discrimination is not being presented to the jury for trial. The only claims in the Plaintiff's Complaint are for Section 1983 Excessive Force, Assault and Battery. Plaintiff's unsuccessfully tried to amend the complaint to assert a discrimination claim, but that motion was denied. See Doc. 60 (noting motion to amend orally denied from bench); Doc. 62 (transcript of oral ruling at hearing) at pp. 24-27.

The Court's denial of the motion to amend the complaint was appropriate, because, among other reasons, the entire racial discrimination claim is premised on the allegation that excessive force was used. This was the basis of Magistrate Judge Keyes' ruling that the racial discrimination claim should be added to this lawsuit for trial: because if the jury finds that there was no excessive force, that would preclude a jury finding that the officers were motivated to commit excessive force by racial discrimination. See id. Indeed, Mr. Micko, counsel for Plaintiff, acknowledged as much at the hearing on the motion to amend the Complaint. *See* Doc. 62 at pp. 22-23 (regarding whether a jury verdict that the

Defendant officers did not use excessive force would preclude Plaintiff's discrimination claim).

This lawsuit is not about any racial discrimination and no mention of those allegations should be mentioned to the jury.  This exclusion should include -- but not be limited to -- the probable cause determination from the Department of Civil Rights.

C.    The Probable Cause determination is hearsay.

The MDCR determination is a preliminary determination made by the MDCR.  Such determinations are later tried in a full hearing, before the Minneapolis Commission on Civil Rights, and do not represent a final finding of the MDCR or the Commission.  Reports that do not constitute the findings of an agency do not meet the hearsay exception of Fed. R. Civ. P. 803(8)(C).  *Figures v. Board of Pub. Utils.*, 967 F.2d 357, 360 (10th Cir. 1992).  Thus, when, such as here, a probable cause determination is subject to de novo review and final determination later by a fact finder, the report does not meet the requirements of Fed. R. Evid. 803(8)(C).

D.    The Probable Cause determination is irrelevant, prejudicial and confusing.

The MDCR Probable Cause determination should also be excluded because it is irrelevant, prejudicial and confusing.

In *Sanders v. Johnson Bros. Liquors, Inc.*, 0:05-cv-00686-DWF-AJB 2006 Judge Frank stated that a probable cause determination by the St. Paul Department

24

of Human Rights would not be admissible at trial when, among other things, the

investigation never proceeded to contested hearing  *See Sanders v. Johnson Bros.*

*Liquors, Inc.*, 2006 WL 3081050, *4, at fn3  (D.Minn. Oct. 27 2006) (Case 0:05-

cv-00686-DWF-AJB, Doc. 21. at 8-9), *citing Johnson v. Yellow Freight System,*

*Inc.,* 734 F.2d 1304, 1309 (8th Cir. 1984).

In *Johnson v. Yellow Freight System, Inc.,* 734 F.2d 1304, 1309 (8th Cir.

1984), the Court of Appeals affirmed the District Court's decision to exclude the

EEOC findings in the case.  The Court noted that under *Chandler v. Roudebush*,

425 U.S. 840, 863 n. 39, (1976), a court may admit administrative findings in a

trial de novo on the same issue, a trial court may exclude them if "sufficient

negative factors are present."  *Johnson*, 734 F.2d at 1309, citing Fed.R.Evid.

803(8)(C) (Notes of Advisory Committee on Proposed Rules).

> The trial judge correctly may perceive a danger of unfair prejudice to
> the defendant or properly may consider that time spent by the
> defendant in exposing the weaknesses of the EEOC report would
> add unduly to the length of the trial. Moreover, the trial judge
> properly may give weight to the hearsay nature of the EEOC report
> and to the inability of the defendant to cross-examine the report in
> the same way that a party can cross-examine an adverse witness. For
> these reasons, we hold that in an employment discrimination case the
> admission of administrative findings, such as an EEOC reasonable
> cause determination, is to be left to the sound discretion of the trial
> court. We believe that this is particularly important in cases, like the
> present one, in which an employment discrimination claim is tried to
> a jury.

*Johnson,* 734 F.2d at 1309.

Significant "negative factors" mentioned in Johnson are also present here.

First, the findings are irrelevant to the claims before the jury.  Under Fed. R. Civ.

P. 401, relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable. The findings do not fit this definition. The Department of Civil Rights is not charged with deciding whether a police officer uses excessive force -- it is charged with deciding whether there is probable cause to believe that a violation of the anti-discrimination ordinance has occurred. That question is not before this jury. Therefore, they are not relevant.

Second, the findings offer no probative value at all. The MDCR investigation relied completely on the discovery in this lawsuit. There was no additional information gleaned by the investigators that could be useful to the jury in this case in determining whether excessive force was used. And if the investigator was able to discover some important piece of evidence that was not discovered by the Plaintiff's attorneys in this lawsuit, that evidence could be presented to the jury, but not through the prejudicial lens of the probable cause determination.

Third, the findings are prejudicial. They would serve only to paint the defendant officers as racists; bad people. This violates Fed. R. Civ. P. 403, which states that evidence (even relevant evidence) may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, among other reasons. See Fed. R. Civ. P. 403.

Fourth, the findings would serve to invade the province of the jury on deciding the ultimate question of fact before it -- did these officers use excessive

force on Dominic Felder?  In essence, the presentation of the findings would broadcast a message to the jury that professionals have already looked at these allegations, and they have concluded that the officers did in fact violate Felder's rights.  And Plaintiff already intends to call at least one expert to testify about his expert opinion on that ultimate question.

Fifth, the findings could lead to juror confusion for numerous reasons. First, the MDCR report was issued by a quasi-independent department of the City of Minneapolis: the Department of Civil Rights.  Jurors are likely to attribute statements and opinions of the department to those of the Defendant as a whole. That could not be further from the truth.   Should the MDCR Determination be admitted, Defendant will be left explaining to the jury the complex and opposing position that it takes with its own department.  This confusion alone is sufficient to exclude the MDCR Determination.

Other factors exist to warrant exclusion under the *Johnson v. Yellow Freight* doctrine.  The MDCR Determination is filled with internal inconsistencies. Defendants believe the Determination contains errors in the law and the facts.

This excessive force case tried before a jury should not be allowed to devolve into mini-trials on the probable cause determinations, especially when, as here, the determination is based entirely on discovery in this case.  The jury will have ample opportunity to hear from witnesses first hand.  There is no reason to admit the MDCR probable cause determination.

Respectfully submitted,

Dated:  October 11, 2010          SUSAN L. SEGAL
                                 Minneapolis City Attorney
                                 By

                                  s/ Sara J. Lathrop

                                 TIMOTHY S. SKARDA
                                 Attorney Reg. No. 10176X
                                 Assistant City Attorney
                                 SARA J. LATHROP
                                 Attorney Reg. No. 310232
                                 Assistant City Attorney
                                 350 South Fifth Street, Suite 210
                                 Minneapolis, MN 55415
                                 (612) 673-2072
                                 Fax: (612) 673-3362

                                 Attorneys for Defendants