```
         UNITED STATES DISTRICT COURT
            DISTRICT OF MINNESOTA
          Civil No. 07-4929(DSD/JJK)
```

Katie J. Felder, as trustee
for the next of kin of
Dominic Aries Felder,

       Plaintiff,

v.                                                  **ORDER**

Jason King, individually and in
his official capacity as a City
of Minneapolis Police Officer,
Lawrence Loonsfoot, individually
and in his official capacity as
a City of Minneapolis Police Officer,
and City of Minneapolis,

       Defendants.

    James R. Behrenbrinker, Esq., 400 South Fourth Street, Suite 202, Minneapolis, MN 55415 and Douglas L. Micko, Esq., Beth A. Erickson, Esq., and Lawrence P. Schaefer, Esq. and Schaefer Law Firm, 400 South Fourth Street, Suite 202, Minneapolis, MN 55415, counsel for plaintiff.

    Timothy S. Skarda, Esq., Sara J. Lathrop, Esq., Minneapolis City Attorney's Office, 350 South Fifth Street, Room, 210, Minneapolis, MN 55415, counsel for defendants.

This matter is before the court upon the motion of defendants Jason King and Lawrence Loonsfoot for remittitur, a new trial or to alter or amend the judgment. Based on a review of the file, record and proceedings herein, and for the following reasons, the court denies the motion.

**BACKGROUND**

This excessive-force dispute arises out of the death of Dominic Felder (decedent) during his arrest by defendants on September 20, 2006. Plaintiff Katie J. Felder (Felder) sued as trustee for decedent's next of kin under 42 U.S.C. § 1983 and common law assault and battery. The matter proceeded to jury trial.[1] On October 25, 2010, the jury found defendants liable and awarded Felder $1,010,000 in compensatory damages and $800,000 in punitive damages. Defendants timely moved for remittitur, a new trial or to amend judgment. The court now considers the motion.

**DISCUSSION**

**I.  Remittitur**

A district court will order remittitur of a jury award "only when the verdict is so grossly excessive as to shock the conscience of the court." Eich v. Bd. of Regents for Cent. Mo. State Univ., 350 F.3d 752, 763 (8th Cir. 2003) (citation omitted). A verdict is not grossly excessive "unless there is plain injustice or a monstrous or shocking result." Id. (citation and internal quotation marks omitted); see also DeWitt v. Schuhbauer, 177 N.W.2d 790, 795 (Minn. 1970) (holding remittitur warranted only

---

[1] The argumentative opening statement of Felder's attorney led the court to suggest that a mistrial might be warranted. Tr. 73:6–74:8. Defendants declined to seek a mistrial and trial proceeded. See id.

when award "so greatly exceeds that which is adequate" that it appears to have been "awarded as the result of passion and prejudice" rather than evidence).

Minnesota law guides the court's analysis of the excessiveness of the verdict. See Am. Bus. Interiors, Inc. v. Haworth, Inc., 798 F.2d 1135, 1146 (8th Cir. 1986). In Minnesota, the measure of damages for wrongful death is the pecuniary loss resulting from the death, not the value of a human life in the abstract. Ahrenholz v. Hennepin Cnty., 295 N.W.2d 645, 648 (Minn. 1980). A jury may consider a decedent's past contributions; life expectancy at the time of death; health, age, habits, talents, and success; occupation; past earnings; likely future earning capacity and prospects of bettering oneself had he lived; living expenses; legal obligation to support spouse or next of kin and the likelihood of fulfilling that obligation; reasonable funeral and necessary medical expenses; probability of paying off existing debts; future counsel, guidance, and aid; and future advice, comfort, assistance, and protection. See Youngquist v. W. Nat. Mut. Ins. Co., 716 N.W.2d 383, 386 (Minn. Ct. App. 2006) (citing 4A Minnesota Practice § 91.75). A jury may not consider mental anguish or grief. Damages may not be "speculative, remote, or conjectural." Leoni v. Bemis Co., 255 N.W.2d 824, 826 (Minn. 1977). The jury is uniquely competent to determine damages in a wrongful death action. See Ahrenholz, 295 N.W.2d at 648.

Defendants first argue that Felder's only evidence of decedent's contributions was $125 per month in child support. Contributions refer to the amount a decedent "would have contributed in money, property or services during the remainder of his life." Fussner v. Andert, 113 N.W.2d 355, 360 (Minn. 1962). Felder introduced evidence that decedent worked 35 hours a week as a telemarketer, and had done so for over ten years. See Tr. 129:10–13; 404:8–17. Felder also introduced evidence that decedent provided financial support for his two daughters. As a result, Felder introduced sufficient evidence to support a finding that decedent's financial contributions were greater than $125 a week.

Defendants next argue that they were prejudiced by the closing argument, and that the jury award of $1,010,000 is suspiciously similar to damages urged by Felder. During closing argument, Felder's attorney told the jury to consider that decedent would have worked 40 hours a week for the next 50 years earning $10 an hour for a total of $850,000. "Using mathematical formulae for purely illustrative purposes in arguing damages for wrongful death is permissible, as long as the figures are supported by the evidence." Ahrenholz, 295 N.W.2d at 648. In this case, other than actuarial life expectancy, the argument exaggerated the evidence. However, the exaggerated salary and hours suggested were reasonably supported by the evidence. Moreover, Felder argued that the numbers yielded a total of $850,000, not the $1,010,024 value that

4

defendants calculate using a standard-holiday calculation. See Defs.' Mem. Supp. 8, ECF No. 119, at 8. That standard-holiday calculation was not provided to the jury.[2] Further, the court instructed the jury several times that the arguments of counsel were not to be considered as evidence, and that only the jury's recollection of the evidence mattered. As a result, defendants' argument fails.

Defendants also argue that Felder failed to provide evidence upon which the jury could consider what "counsel, guidance, and aid" and "advice, comfort, assistance, and protection" decedent would have given his next of kin. The record shows that Felder presented evidence that decedent lived with, and helped care for, one of his daughters and her mother, and that he paid child support and spent time with his other daughter. See, e.g., Tr. 391-92. Felder presented evidence that decedent played an active role in the lives of his two children. As a result, the evidence provided a basis for the jury to compensate Felder for the loss of decedent's noneconomic support for his next of kin.

In the present case, the jury did not itemize its award or distinguish the values of economic and noneconomic damages. Although the $1,010,000 award is liberal, the court cannot say that

---

[2] Defendants also argue that a jury question about how to determine damages shows that the award was speculative. However, the court directed the jury to review its instructions, which enumerated the factors the jury could and could not consider. There is no evidence that the jury did not follow that directive.

it is "grossly" excessive or "shocking" in light of the evidence presented. See Larson v. Degner, 78 N.W.2d 333, 339 (Minn. 1959). Therefore, the motion for remittitur is denied.[3]

**II.  New Trial Under Rule 59(a)**

The decision to grant a new trial under Federal Rule of Civil Procedure 59(a) is committed to the discretion of the district court, which has "the benefit of hearing testimony and observing the demeanor of witnesses throughout the trial." Jones v. TEK Indus., 319 F.3d 355, 358 (8th Cir. 2003); see Fireman's Fund Ins. Co. v. Aalco Wrecking Co., 466 F.2d 179, 186 (8th Cir. 1972). "A new trial is required only when necessary to avoid a miscarriage of justice." Gearin v. Wal-Mart Stores, Inc., 53 F.3d 216, 219 (8th Cir. 1995) (citation omitted). As a result, the district court "may not grant a new trial simply because the trial court would have found a verdict different from the one the jury found." Butler v. French, 83 F.3d 942, 944 (8th Cir. 1996).

**A.  Expert Testimony**

A party must disclose the identity of any expert witness she may use at trial, and each expert must provide a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them ... and the facts or data considered by the witness in forming them." Fed. R. Civ. P.

---

[3] Because the court finds no reason to alter the amount of compensatory damages, the court does not address defendants' argument for proportional reduction of the punitive damages.

26(a)(2). Failure to disclose under Rule 26 may result in exclusion of evidence or other sanctions, within the discretion of the district court. See Wegner v. Johnson, 527 F.3d 687, 692 (8th Cir. 2008) (citing Fed. R. Civ. P. 37(c)(1)).

Evidentiary errors warrant a new trial only when they affect the substantial rights of the parties. Williams v. City of Kansas City, Mo., 223 F.3d 749, 755 (8th Cir. 2000) (citation omitted). Such errors affect a party's substantial rights when their cumulative effect "substantially influence[s] the jury's verdict." Id. Defendants argue that the court committed several errors in rulings about the expert testimony of Richard Ernest, Fred Robinette and Lindsay Thomas. The court addresses each witness in turn.

### 1.   Richard Ernest

Felder presented the testimony of ballistics expert Ernest by video deposition. Defendants argue that Ernest testified about opinions not disclosed in his Rule 26 report, namely the transfer of DNA to King's weapon, the distance between King's weapon and decedent when it discharged and the absence of impact marks on decedent's head.

Defendants first argue that Ernest gave improper opinion about DNA. Defendants objected to Ernest's opinion that the lack of DNA on the butt of the gun was inconsistent with the testimony of defendants. See Micko Aff. Ex. 2, ECF No. 133-3, at 6. Defendants

renewed this objection during trial and the court sustained the objection. See Tr. 264:16-266:11. The court excluded testimony by Ernest regarding DNA transfer onto the gun. Id. As a result, defendants' argument fails, and the court finds no evidentiary error related to Ernest regarding DNA.

Defendants next argue that the court erred by allowing Ernest to testify about the distance between King's .45-caliber gun and decedent, because Ernest did not disclose this opinion in his expert report. Defendants objected during the deposition and renewed their objection at trial. See Tr. 263:18-22. Specifically, defendants objected to the following exchange:

> Q   Okay.  To have the absence [of gunshot residue], based on your experience and training, do you have an opinion as to how far away the 45 would have to have been fired from — to have the absent amount of gunshot residues on the material?
>
> MR. SKARDA: Objection, beyond the scope of his Report.
>
> A   I do have an opinion.  And based upon experience with this particular caliber and type of ammunition and this particular type of pistol, we're talking a range of about three to five feet where no gunpowder particles or gunshot residues are seen any more.

Ernest Dep. 57:17-58:4; see id. at 56:18-25. Ernest's expert report states:

> [N]one of the bullet holes in the clothing indicate the presence of close range gunshot residues. The clothing reveals very little in the way of gunpowder particles recovered from the use of tape lifts and scraping techniques for trace evidence. This is to be perhaps expected from the six 9mm shots fired by Officer Loonsfoot which reasonably may have been fired from a distance of three feet or greater....

Id. at 5. As a result, defendants had notice that Ernest intended to opine about the distance, and that he believed that the gun was at least three feet away from decedent. His deposition testimony, in which he opines that the gun was three to five feet from decedent is substantially the same as his report. Therefore, Ernest disclosed his opinion regarding distance, and a new trial is not warranted on this basis.

Defendants next argue that the court erred by allowing Ernest to opine about the lack of impact marks on decedent's head. Specifically, defendants object to the following exchange:

> Q   Okay. Would you, based on your experience, would you reasonably expect an officer who was hitting Mr. Felder on the back of the head with the butt of his gun to leave a mark on the head?
>
> A   Yes. He should have impact marks on the back of his head —
>
> MR. SKARDA: Objection, beyond the scope of the expert report.

Ernst Dep. 85:18-25. At trial, defendants renewed their objection, and added an objection based on Ernest's qualification to offer

such an opinion.[4]  See Tr. 269:1–5.  A qualified witness may offer expert opinion about "scientific, technical or other specialized knowledge."  Fed. R. Evid. 702.  When a witness is not testifying as an expert, the witness may state an opinion only if the opinion is (a) rationally based on the perception of the witness, (b) helpful to the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge. See Fed. R. Evid. 701.  In this case, the court overruled the objection, because testimony that a strike with the metal butt of a gun leaves a mark on skin is merely a commonsense assertion that does not require specialized knowledge.  See Tr. 269:17–270:5.  Moreover, there was no dispute that the autopsy report did not indicate an injury on the back of decedent's head.  As a result, Ernest's statement is not subject to the disclosure requirement of Rule 26. Therefore, its admission was not error, and a new trial is not warranted on this basis.

### 2. Fred Robinette

Defendants first argue that the court erred by allowing use-of-force expert Robinette to opine that the shooting was not justified because Robinette did not disclose this opinion in his expert report.  Robinette's expert report states:

---

[4] Felder's argument that defendants did not object to the deposition testimony of Ernest is meritless and misrepresents the record.

>       Assuming that this portion of the officers'
>       version is correct, then the deadly force used
>       against Felder was a direct and causal result
>       of King's negligent handling of his firearm,
>       and a violation of his training to ensure the
>       safety of officers and arrestees.  King's
>       negligent actions, then, precipitated a deadly
>       force encounter that would have otherwise most
>       likely proved unnecessary.

Lathrop Aff. Ex. B, at 5.  At trial, Robinette had the following exchange with Felder's attorney:

>       Q.   Mr. Robinette, based upon the standards
>       and training of police officers around the
>       country, do you have an opinion, sir, in this
>       case whether the homicide of Dominic Felder
>       was justified?
>
>       A.   Are you talking about the events that led
>       up to the shooting or the actual totality of
>       evidence that I've looked at?
>
>       Q.   Based upon the totality of the evidence
>       you've looked at, as well as your
>       understanding of the standards of training for
>       police officers around the country.
>
>       A.   Yes.  Based upon my review of the
>       evidence in this case, including the
>       self-serving statement of the two officers,
>       there's no evidence in this case that can
>       objectively lead me to conclude that this was
>       a justified shooting.

Tr. 366:1-14.  Robinette's expert report provided notice to defendants that he had formed an opinion that the shooting was a result of errors and would not have happened but for those errors. As a result, defendants had proper Rule 26 notice of Robinette's opinion that their acts were not justified in light of the circumstances.  Cf. Smith v. Tenet Healthsystem SL, Inc., 436 F.3d

11

879, 889 (8th Cir. 2006). Therefore, the argument fails, and a new trial is not warranted on this basis.

Defendants also argue that the court erred by allowing Felder to introduce excluded testimony of Robinette through cross-examination of defense expert Todd Sauvageau. Specifically, defendants argue that Sauvageau testified about training, yet Felder attempted to impeach him through excluded forensic testimony of Robinette. At trial, the court overruled defendants' objections because the forensic testimony was already before the jury. See Tr. 452:11-18; 454:1-4, 457:17-458:9. Sauvageau opined that the shooting — as described by defendants — was justified according to proper use-of-force training. Felder's introduction of testimony calling into question defendants' version of the events was proper cross-examination, because it challenged the basis of Sauvageau's opinion. Therefore, admission of the testimony was not error, and a new trial is not warranted on this basis.[5]

### 3. Lindsay Thomas

Defendants argue that the court erred by excluding certain testimony of Thomas. Thomas is a forensic medical examiner and pathologist. Felder moved to exclude Thomas's opinions about the level of confusion present at the time of the shooting. The court

---

[5] Moreover, even if such testimony constituted error, it did not prejudice defendants. All of the objected-to testimony was already before the jury through Ernest's testimony and the use of this testimony on cross examination was not needlessly cumulative.

granted the motion in part, ruling that Thomas would not be allowed to opine "about why defendants' account of the shooting might be inconsistent with forensic evidence" but that she could opine about "the wounds, the trajectories, and whether they are consistent or inconsistent with the officers' statements." Tr. 8:15-25, 9:10-13. Defendants argue that the court erred by excluding this testimony because it was disclosed in Thomas's expert report and Thomas was qualified to offer such opinion. The court agrees that the opinion was disclosed; however, Thomas is not qualified to offer expert opinion about why defendants' recollection of the shooting might differ from the forensic evidence. Therefore, excluding such opinion was not error, and is not a basis for a new trial.

### B.  Improper Cross Examination

Defendants next argue that Felder improperly cross-examined both defendants by quoting their depositions which implied that they had testified inconsistently. Felder argues that the impeachment was proper. The court sustained objections to three instances of improper impeachment. See Tr. 689:13-690:17, 691:14-692:9, 694:9-20. Review of the record shows, however, that Felder used deposition testimony during cross-examination to show inconsistencies. See Tr. 218:16-17:22, 232:18-233:4, 277:6-278:11, 280:24-281:5, 281:16-282:2, 299:16-300:7. Whether those inconsistences were trivial or significant was a matter for the jury to decide. Therefore, the court determines that Felder's use

13

of depositions during cross-examination did not prejudice defendants.

### C. Prohibited Question

Defendants also argue that they were prejudiced by Felder's improper question about previous shooting incidents, which Felder's attorney asked despite being prohibited from so doing by the ruling of the court on a motion in limine.  Felder asked:

> Q.  Now, if the Felder homicide — this is not the first shooting that you personally have been involved in?
>
> MS. LATHROP: Objection.
>
> THE COURT: Sustained based on our discussions in chambers.
>
> MR. BEHRENBRINKER: May I just approach, your Honor?
>
> THE COURT: Briefly.
>
> MR. BEHRENBRINKER: Certainly.
>
> (Sidebar discussion held on the record.)
>
> MR. BEHRENBRINKER: Was there a motion to keep this out?
>
> MS. LATHROP: Yes, absolutely.

Tr. 645:7-19.  After discussion, the court confirmed the prior ruling.  Counsel returned to their seats and trial continued. Felder then asked another question that was subject to a different motion in limine.  Defendants again objected, and Felder's counsel requested a sidebar conference.  After the court sustained the objection, defendants asked:

14

> MS. LATHROP: Your Honor, could we just — the previous objection about — that I made about the other shootings, would the Court consider giving a curative instruction? He already suggested to the jury that he was involved in another shooting.
>
> THE COURT: No, I don't think there was any answer. What the lawyers say is not evidence.

Tr. 649:3-9. When, as in the present case, an order granting a motion in limine is specific in its prohibition and the violation is clear, "a new trial may follow only where the violation has prejudiced the parties or denied them a fair trial." Pullman v. Land O'Lakes, Inc. 262 F.3d 759, 762 (8th Cir. 2001). (citations omitted). Although the court does not condone counsel's blatant disregard of its orders, the court finds that defendants were not prejudiced by the question. King did not answer the question, and the court told the jury several times that statements and questions of lawyers are not evidence. Therefore, the court determines that the prohibited question did not prejudice defendants.

### D. Closing Argument

Defendants next argue that Felder made statements during closing argument unsupported by the evidence. "A new trial should be granted where the improper conduct of counsel in closing argument are plainly unwarranted and clearly injurious." Billingsley v. City of Omaha, 277 F.3d 990, 997 (8th Cir. 2002). In the present case, the remarks that decedent earned $10 an hour, that DNA was found only on the left side of the gun, that the

15

street in question was "a relatively big street" that is "one of the main streets going north and south in Minneapolis," contained exaggeration and were provocative. They were not, however, plainly unwarranted based on the evidence at trial. Moreover, the court cautioned the jury that the arguments of the attorneys are not evidence. Therefore, the statements of Felder's counsel during closing arguments do not warrant a new trial.

### E.   Cumulative Effect

Lastly, defendants argue that even if the individual alleged errors do not warrant a new trial, their cumulative effect and the hyperbolic attacks of Felder's attorneys deprived them of a fair trial. The court has determined that the jury awarded damages within its discretion based on the evidence, that the evidentiary rulings were not erroneous, that the use of deposition testimony during cross-examination was not improper, that defendants were not prejudiced by Felder's counsel disregard of the court's ruling on motions in limine and that the closing argument was within the scope of the evidence. The court expresses no opinion about the demeanor and manner in which Felder's counsel comported themselves at trial. Further, defendants have not demonstrated that they were prejudiced by these alleged errors. Therefore, the court determines that the alleged individual or cumulative errors did not substantially influence the verdict, and a new trial is not warranted.

**III. Alter or Amend Judgment Under Rule 59(e)**

Defendants also argue that the court should alter or amend judgment for the same reasons that it should grant a new trial. "Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006) (citation and internal quotation marks omitted). The court has already determined that defendants have not shown error or that the alleged errors caused prejudice. Therefore, for the reasons previously stated, altering or amending the judgment is not warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that defendants motion for remittitur, and/or a new trial, and/or to alter or amend the judgment [ECF No. 117] is denied.

Dated: May 31, 2011

s/David S. Doty<br>
David S. Doty, Judge<br>
United States District Court